UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AARON TYLER AND TELISHA BLAKNEY          **14 CV 1360 (MKB)(VVP)**

                   Plaintiffs,            **AMENDED COMPLAINT**

      -against-                  **JURY DEMAND**

THE CITY OF NEW YORK,
PO KADIA SAUNDERS (Shield #16002),
SERGEANT LUIS MACHADO, DETECTIVE
MICHAEL MANZOLILLO (Shield #3882),
SERGEANT BRENNAN DANIEL, and
"JOHN DOE AND JANE DOE #1-4"
(the names John and Jane Doe being fictitious
as their true names are presently unknown),

                   Defendants.
--------------------------------------------------------x

     Plaintiffs, by their attorneys, Law Office of Philip Akakwam, P.C., complaining of the

defendants, The City of New York, PO Kadia Saunders (Shield #16002), Sergeant Luis

Machado, Detective Michael Manzolillo (Shield #3882), Sergeant Brennan Daniel, and "John

Doe and Jane Doe #1-4" (collectively "defendants"), upon information and belief alleges as

follows:

<u>**INTRODUCTION**</u>

     1. This is an action at law to redress the deprivation under color of statute, ordinance,

regulation, custom, or usage of rights, privileges, and immunities secured to the plaintiffs by the

Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by

Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the City and State

of New York].

2. Plaintiff, Aaron Tyler, seeks monetary damages for: the false arrest, false imprisonment and malicious prosecution of said plaintiff, and otherwise, for the violation of his federally guaranteed constitutional and civil rights. Also, both plaintiffs seek damages for trespass and for property damage. Plaintiffs seek whatever other relief is appropriate and necessary in order to serve the interest of justice and assure that their remedy is full and complete.

## JURISDICTION

3. The jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343[3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and under the Fourth and Fourteenth Amendments to the United States Constitution.

4. Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party Jurisdiction.

5. Plaintiff requests that the Court invoke pendent jurisdiction over any and all claims arising under the laws and Constitution of the State of New York.

6. The State law claims have a common nucleus of operative facts with the federally based claims and they arise out of the same transaction(s) and occurrence(s) giving rise to the Plaintiff's federally based claims and causes of action.

7. Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice in order to provide Plaintiff with a full and complete remedy for the violation of her rights.

2

**PARTIES**

8.  Plaintiff, Aaron Tyler, a black male, is a resident of the City of New York, County of Kings and State of New York.

9.  Plaintiff, Telisha Blakney, a black female, is a resident of the City of New York, County of Kings and State of New York.

10.  Upon information and belief and at all times relevant herein, defendants, PO Kadia Saunders (Shield #16002), Sergeant Luis Machado, Detective Michael Manzolillo (Shield #3882), Sergeant Brennan Daniel, and John Doe and Jane Doe #1-4 (hereinafter "defendant officers") were, and still are, agents and/or officers employed by defendant City of New York.

11.  At all times herein, the defendant officers were acting under the color of their official capacity and their acts were performed under color of the statutes and ordinances of the City of New York and the State of New York. The defendant Police Officers were the servants, agents, and employees of their co-defendant, the City of New York. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, they were taken in and during the course of their duties and functions as New York City Police Officers and incidental to the otherwise lawful performance of the same.

12.  The City of New York is a municipal entity existing under the laws and Constitution of the State of New York and was the employer of the defendant police officers through its Police Department - New York City Police Department- and the actions of the police officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York.

13.  Plaintiff is suing the defendant officers in their individual and official capacities.

3

## FACTS COMMON TO ALL CAUSES OF ACTION

14.   On or about January 2, 2012, at approximately 9:00 p.m., while plaintiffs were in their home located at 919 Myrtle Avenue, Brooklyn, New York, defendant officers, acting in concert and without probable cause, assaulted and arrested plaintiff, Aaron Tyler.

15.   On the date aforesaid, defendant officers went to plaintiffs' home and without showing any warrant to plaintiffs, arrested plaintiff Aaron Tyler and transported him in handcuffs to the 79th Police Precinct. Mr. Tyler asked why he was being arrested but the defendant officers refused to tell him.

16.   At the precinct, plaintiff, Aaron Tyler was searched, fingerprinted, photographed and thrown into cell. Later he was transported to the Central Booking where he was further detained in a holding cell pending his arraignment.

17.   Plaintiff, Aaron Tyler, was later charged with alleged witness tampering and after arraignment, he was detained further at Riker's Island for about five days before he was released.

18.   Thereafter, plaintiff, Aaron Tyler, was maliciously prosecuted by the defendants for several months until all the false charges brought against plaintiff were summarily dismissed.

19.   Again, on or about November 29, 2012, at approximately 9:30 p.m., while plaintiffs were in their home located at 919 Myrtle Avenue, #15K, Brooklyn, New York, defendant officers came and banged at plaintiffs' door.

20.   When Plaintiff, Telisha Blakney, answered the door, the defendant officers said they had come to look for guns in plaintiffs' apartment.

21.   Plaintiff, Blakney, demanded that defendant officers show her a warrant authorizing them to enter her house to search for guns.

4

22.   Rather than show a warrant to plaintiffs, defendant officers threatened to cause plaintiffs to lose their subsidized housing and to take the whole family to jail if they did not open the door and let them into their home. Also, defendant officers told plaintiffs that they had police dogs downstairs and would not hesitate to unleash them to tear apart plaintiffs' apartment if plaintiffs refuse to allow defendant officers into their apartment.

23.   Without plaintiffs' consent, defendant officers entered their apartment and tossed up the whole apartment. They broke plaintiffs' bed and ripped their couches in search of guns. Plaintiffs did not have a gun and no guns were found in their apartment by the defendants.

24.   Defendant officers removed plaintiff Aaron Tyler from the bathroom, took him to the living room and, without even allowing him to wipe his body, they handcuffed him. He remained in handcuffs for almost one hour and watched as defendant officers destroyed much of his property under the guise of searching for guns.

25. One of the officers waived his gun at plaintiff, Aaron Tyler, and said "I thought you said you didn't have a gun"; when plaintiff looked at the officer, the officer said "I am just joking with you" and he then put back the gun in his holster.

26.   After searching and tearing up plaintiffs' apartment for about one hour and finding nothing, defendant officers left.

27.   Further, on or about December 13, 2012, at approximately 8:20 a.m., while plaintiffs were in their home at 919 Myrtle Avenue, #15K, Brooklyn, New York, defendant officers, without probable cause or reasonable suspicion, entered plaintiffs' home and arrested plaintiff, Aaron Tyler.

28.   And without a search warrant, defendant officers entered and searched plaintiffs'

5

home allegedly looking for marijuana. They did not find any marijuana.

29.  Plaintiff, Aaron Tyler, was transported to the police precinct where he was fingerprinted, photographed and detained in a cell. After detaining plaintiff, Aaron Tyler, at the Precinct for a lengthy period of time, he was transported to the Central Booking to await arraignment.

30.  Thereafter, plaintiff, Aaron Tyler, was charged to court on the false allegation of marijuana possession, among other things.

31. Upon plaintiff's arraignment, the charges were dismissed and plaintiff was released.

32.  Plaintiff, Aaron Tyler, suffered physical injuries, including injury to his wrists. Moreover, said plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, loss of liberty, psychological trauma, pain, damage to property, and damage to reputation as a consequence of the defendants' unlawful conduct alleged herein.

33. The Plaintiffs suffered violations of their federally guaranteed constitutional and civil rights including rights guaranteed to them under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

34.  Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including defendant officers in this case, for the violations of the constitutional rights of citizens, thereby causing police officers including defendant officers, to engage in unlawful conduct.

35. The policies and practices complained of herein also violate the rights of Plaintiff under the Constitution and laws of the City and State of New York.

36. The actions and conduct of the Defendant Officers and the policies and practices of

6

the City of New York were negligent and were the proximate cause of damages to the Plaintiff.

37. The Defendant Officers acted together and in concert sanctioning and ratifying and otherwise condoning the wrongful actions being taken by each of the defendant Officers in a collective manner and fashion.

38. The Plaintiffs have no other adequate remedy at law but for this action.

## AND AS FOR A FIRST CAUSE OF ACTION

39. Plaintiffs reiterate paragraphs 1 through 38 and incorporate such by reference herein.

40. The conduct of the defendant officers, as described herein, amounted to false arrest, false imprisonment, use of excessive force, illegal search and seizure, racial profiling, pattern of harassment, malicious prosecution, abuse of authority, and violation of due process rights.

41. Such conduct violated plaintiffs' right under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. By violating plaintiffs' constitutional rights under color of State Law, the Defendant Police Officers violated the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

42. Consequently, plaintiffs have been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## AND AS FOR A SECOND CAUSE OF ACTION

43. Plaintiffs reiterate paragraphs 1 through 42 and incorporate such by reference herein.

44. Defendant Police Officers falsely arrested and imprisoned plaintiff, Aaron Tyler, in violation of the Common Law.

45. The false arrest and imprisonment of said plaintiff was carried out without a valid

7

warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

46.  Defendant Police Officers acted with malice and reckless and intentional disregard for said plaintiff's rights under common law when they arrested and imprisoned him without any justification. Therefore, said Defendant Police Officers are guilty of egregious and gross misconduct towards plaintiff, and plaintiff prays for an award of punitive damages against the individual defendants.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff, Aaron Tyler, sustained the damage herein before stated.

## AND AS FOR A THIRD CAUSE OF ACTION: ASSAULT AND BATTERY

48. Plaintiffs reiterate paragraphs 1 through 47 and incorporate such by reference herein.

49. The conduct of defendant officers, as described herein, amounted to assault and battery on the plaintiff, Aaron Tyler. The assault and battery was willful, unlawful, unwarranted, and intentional.

50. By reason of and as a consequence of the assault, said plaintiff suffered and continues to suffer injuries to wrists, emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

51. Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure said plaintiff's safety and security and failed to protect and/or safeguard his interests.

52. That defendant City of New York's failure to assure plaintiff, Aaron Tyler's safety

8

and security was a proximate cause of his injuries.

### AND AS FOR A FOURTH CAUSE OF ACTION: MALICIOUS PROSECUTION

53. Plaintiffs reiterate paragraphs 1 through 52 and incorporate such by reference herein.

54. Plaintiff, Aaron Tyler, was subjected to malicious prosecution and malicious abuse of the criminal process in violation of his right under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

55. As a direct and proximate result of the misconduct and abuse of authority detailed above, said plaintiff sustained the damage herein before stated.

### AND AS FOR A FIFTH CAUSE OF ACTION

56. Plaintiffs reiterate paragraphs 1 through 55 and incorporate such by reference herein.

57. By arresting, detaining and maliciously prosecuting plaintiff, Aaron Tyler, without justification, probable cause or reasonable suspicion, and assaulting plaintiff and using excessive force against him, the defendant officers, deprived him of rights, remedies, privileges and immunities guaranteed to every New Yorker by Article 1, Section 12 of the New York State Constitution.

58. In addition, the defendant officers conspired among themselves to deprive plaintiff, Aaron Tyler of his constitutional rights secured by Article 1, Section 12 of the New York State Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

59. The Defendant Officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD Officers. Such acts by Defendant Officers were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly,

and with the specific intent to deprive the plaintiff, Aaron Tyler, of his constitutional rights secured by Article 1, Section 12 of the New York State Constitution.

60. Defendants, their officers, attorneys, agents, servants and employees were responsible for deprivation of Plaintiff's State Constitutional rights. Defendant City, as employer of each of the defendant officers, is responsible for their wrongdoing under the common law doctrine of *respondeat superior.*

61. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff, Aaron Tyler, sustained the damage herein before stated.

## AND AS FOR A SIXTH CAUSE OF ACTION

**(Monell/42 U.S.C. Section 1983: Claim Against Defendant City of New York)**

62. Plaintiffs reiterate paragraphs 1 through 61and incorporate such by reference herein.

63. The foregoing violations of plaintiffs' federal constitutional rights and resultant injuries were directly, foreseeably and proximately caused by conduct, chargeable to defendant City of New York, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

64.  The conduct of the defendant Officers herein were propelled by a policy and practice of the City of New York which promotes an "ends justifies the means" philosophy of combating crime which causes officers to arrest individuals, particularly blacks, without probable cause and to subject such individuals to false criminal charges, to excessive force, assault and battery. The said policy and practice falls disproportionately on persons of color.

65. Also, said policy and practice causes officers to enter and search the homes of black individuals without warrant.

10

66. Defendant City of New York failed to provide proper training and/or failed to insure that the training provided was adequately understood in regard to the following tasks which police officers commonly perform:

(a)     The determination of probable cause to make an arrest;

(b)     The duty to take into account the totality of the circumstances in determining the existence of probable cause to make an arrest;

(c)     The circumstances under which investigative detentions may lawfully occur and the manner in which they may lawfully be executed;

(d)     The very limited circumstances under which a home may be entered without a warrant;

(e)     The very limited circumstances under which a warrantless search of a person or his home may be carried out;

(f)     The scope of authority to search provided by a warrant;

67. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

68. Additionally, defendant City of New York, acting through the Office of the District

11

Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

69. Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are black, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

70. The aforesaid deliberate or *de facto* policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant City of New York, including but not limited to, the New York City Police Commissioner, who knew or should have known that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

71. The policymaking officials at NYPD know or ought to have known that such issues that regularly arise in the investigation and prosecution of criminal cases either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline

12

was demonstrated by a history of police employees mishandling such situations and making the wrong choice.

72. The aforementioned policymaking officials knew that the wrong choice by police officers concerning determination of probable cause will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

73. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

74. For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

75. In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

76. Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

77. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and

13

also admitted to training numerous young police officers to commit similar crimes and/or offenses.

78. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

79. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

80. Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who a surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

81. That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

14

82. That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

83. That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

84.  Defendant City and its policy making officials owed a duty to the plaintiff and the public at large, which they knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct of their employees violating the aforementioned constitutional rights of innocent members of the public including plaintiff.

85. As part of its policies, customs and practices, Defendant City has failed to take proper corrective and punitive actions against overreaching police officers thus creating the impression that crime reduction is paramount and triumphs over constitutional rights in all circumstances.

86 As a result of inadequate training of police officers on the practical meaning of probable cause for arrest, officers frequently detain and/or arrest citizens based on their hunches,

inklings, or mere suspicion and without reasonable or probable cause.

87. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City and its police department, the NYPD, were collectively and individually a substantial factor in bringing about the aforesaid violations by the defendant officers of Plaintiffs' rights under the Constitution and laws of the United States.

88. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiffs' constitutional rights.

## AND AS FOR A SEVENTH CAUSE OF ACTION

### (Negligent Hiring, Training and Supervision Under State Law; Defendant City)

89. Plaintiffs reiterate paragraphs 1 through 88 and incorporate such by reference herein.

90. By virtue of the foregoing, defendant City of New York is liable to plaintiffs because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.

91. As a direct and proximate result of the acts and omissions of the defendants described in this Complaint, plaintiffs suffered loss of liberty, damage to property, emotional pain, distress, humiliation and embarrassment.

## AND AS FOR AN EIGHT CAUSE OF ACTION - TRESPASS

92. Plaintiffs reiterate paragraphs 1 through 91 and incorporate such by reference herein.

93. Defendants entered into plaintiffs' home without their consent, without justification and without search warrant.

94.  As a proximate result of defendants' trespass, plaintiffs have been damaged.

16

**AND AS FOR A NINTH CAUSE OF ACTION - PROPERTY DAMAGE**

95.  Plaintiffs reiterate paragraphs 1 through 94 and incorporate such by reference herein.

96.  As a proximate result of the acts of defendants described above, Plaintiffs suffered damages to their property.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

i.      For compensatory damages in an amount to be determined at trial - against all defendants, jointly and severally;

ii.     For punitive damages against the individual defendants in an amount to be determined at trial;

iii.    For reasonable attorneys' fees, together with costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and to the inherent powers of this Court;

iv.     For pre-judgment interest as allowed by law; and

v.      For such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
       October 7, 2014

                              LAW OFFICE OF PHILIP AKAKWAM, P.C.

                              By:      _____/s/_____
                                       Philip Akakwam, Esq.
                                       Attorneys for the Plaintiffs
                                       303 Livingston Street, 2nd Floor
                                       Brooklyn, N.Y. 11217
                                       (718) 858-2488

**14 CV 1360 (MKB)(VVP)**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AARON TYLER AND TELISHA BLAKNEY

                              Plaintiffs,


        -against-

THE CITY OF NEW YORK,
PO KADIA SAUNDERS (Shield #16002),
SERGEANT LUIS MACHADO, DETECTIVE
MICHAEL MANZOLILLO (Shield #3882),
SERGEANT BRENNAN DANIEL, and
"JOHN DOE AND JANE DOE #1-4"
(the names John and Jane Doe being fictitious
as their true names are presently unknown),

                              Defendants.

# AMENDED COMPLAINT

LAW OFFICES OF PHILIP AKAKWAM, P.C.
Attorneys for Plaintiffs
Office and Post Office Address
303 Livingston Street, 2nd Floor
Brooklyn, N.Y. 11217
(718) 858-2488

TO:


Service of a copy of the within is hereby admitted.


Dated:


_____